OPINION *Page 2 
{¶ 1} Defendant-appellant Robert Smith appeals his conviction and sentence from the Licking County Municipal Court on one count of following too closely, one count of operating a motor vehicle while under the influence of alcohol and a marked lanes violation. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On March 6, 2007, appellant Robert Smith was charged with following too closely in violation of R.C. 4511.34, operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), and failure to drive within marked lanes in violation of R.C. 4511.33. At his arraignment, appellant entered a plea of not guilty to the charges.
 {¶ 3} Subsequently, on August 30, 2007, appellant filed a Motion to Suppress. Appellant filed a second Motion to Suppress on September 26, 2007. Following a hearing held on October 25, 2007, the trial court, pursuant to a Judgment Entry filed on the same day, denied appellant's motions. A jury trial then commenced on October 25, 2007. The following testimony was adduced at trial.
 {¶ 4} Trooper Jermain Thaxton of the Ohio State Highway Patrol testified that, on March 6, 2007 at approximately 1:50 a.m., he was in uniform in a marked cruiser in the area of State Route 16 and State Route 3. The trooper testified that he was "sitting from north to south and my vehicle was pointing southbound in the crossover" and that he had a view of the eastbound lanes. Trial Transcript at 9. Trooper Thaxton testified that, at approximately between 1:55 a.m. and 2:00 a.m., he saw a vehicle traveling *Page 3 
behind a semi vehicle in the right hand lane. The following is an excerpt from Trooper Thaxton's testimony:
 {¶ 5} "A. This vehicle was traveling behind a semi vehicle. They were in the right hand lane and I noticed the vehicle was real close to the semi truck and also noticed that the vehicle was over the dotted white fog line which was to its left.
 {¶ 6} "Q. Now let's back up. The whited (sic) . . . the white dotted line to the left?
 {¶ 7} "A. To his left, yes.
 {¶ 8} "Q. Does that separate the two eastbound lanes?
 {¶ 9} "A. Yes, you got two lanes going eastbound, yet.
 {¶ 10} "Q. O.K. and that is the line separating the lanes?
 {¶ 11} "A. Yes from right to left.
 {¶ 12} "Q. And now you said . . . how far was he away from the semi in front of him?
 {¶ 13} "A. I would say probably a car length.
 {¶ 14} "Q. O.K. and were you able to . . . what is the speed limit for that area of roadway?
 {¶ 15} "A. 55.
 {¶ 16} "Q. Based on what you saw were you able to estimate whether or not they were going close to the speed limit or not?
 {¶ 17} "A. I thought they was (sic) going about 55-60 miles per hour, it wasn't a high rate of speed and they wasn't traveling at a slow rate of speed either." Transcript at 10. *Page 4 
 {¶ 18} Trooper Thaxton testified that he then proceeded to get into the right hand lane and follow both vehicles. After he fell behind the vehicles, the Trooper activated his in-car camera. A video taken from the Trooper's cruiser was marked as State's Exhibit 1 and was played for the jury. The Trooper then initiated a traffic stop and appellant pulled into a closed gas station. Trooper Thaxton testified that he told appellant, who was the driver of the vehicle, that he had been following the semi too closely and had committed a marked lanes violation. Trooper Thaxton testified that, as he was talking with appellant, he smelled a strong odor of alcohol and observed appellant fumbling with his wallet. According to the Trooper, appellant's face was "beet red", his eyes were glassy and bloodshot and his speech was slurred. Trial Transcript at 17. Appellant, who the Trooper testified had trouble comprehending what the Trooper was asking him, denied consuming any alcohol.
 {¶ 19} Based on his observations, Trooper Thaxton had appellant exit the vehicle and perform field sobriety tests. Trooper Thaxton further testified that, when he exited his cruiser, his field microphone was not working and that there was no audio outside of the cruiser. The trooper testified that he explained the horizontal gaze nystagmus (HGN) test to appellant and that he observed six out of a possible six clues when appellant performed the test. Trooper Thaxton also testified that appellant failed the walk-and-turn test and the one-legged stand test.
 {¶ 20} Appellant was then arrested and placed in the back of the cruiser. According to Trooper Thaxton, appellant was "very irate" and the Trooper had trouble handcuffing him. Trial Transcript at 35. The State played the video, which contained all of the audio recorded from inside the cruiser. When the two arrived at the Justice *Page 5 
Center, appellant was read BMV form 2255 and, when asked, refused to sign the same. Trooper Thaxton testified that appellant told him that he would submit to a breath test, but that appellant did not follow the instructions for such test and terminated the test on his own.
 {¶ 21} On cross-examination, Trooper Thaxton admitted that he did not indicate in his written report that appellant fumbled for his wallet and that appellant got out of his truck without any difficulty. The Trooper also testified that three of the marked lane violations he saw were on the videotape while one was not. The following testimony was adduced on cross-examination when the Trooper was asked if he could see the space between appellant's vehicle and the semi:
 {¶ 22} "Q. O.K. Looking at that tape is it fair to say that you . . . looking at that tape, can't see the spacing between the tractor-trailer and Mr. Smith's truck?
 {¶ 23} "A. That's a negative, I disagree. You can see . . . you can see enough that showing that he is following the vehicle too close. No you can't see feet but he is right on top of that vehicle.
 {¶ 24} "Q. Right, that's what I mean. You can't see the distance, can you? All you can see is the top of the truck.
 {¶ 25} "A. Right." Trial Transcript at 76.
 {¶ 26} At trial, appellant testified that he did not consume any alcoholic beverages on the day in question and did not drink alcohol because of his high blood pressure and that he was "a very safe distance" from the semi. Trial Transcript at 88. He further testified that the semi was swerving and that he wanted to pass him, but that every time he thought about doing so, the semi swerved to the left or the right, so he *Page 6 
decided not to pass it. Appellant further testified that the Trooper caused him to hit his head on the door when putting appellant into the cruiser and also slammed the door on appellant's knee, causing appellant to become upset and lose his composure.
 {¶ 27} Appellant's girlfriend, Mandy Shull, testified at trial that she picked appellant up at the Justice Center at approximately 3:00 a.m. and that she did not observe any signs of impairment or intoxication and did not smell alcohol on him. She testified on cross-examination that appellant did not slur his words.
 {¶ 28} After the trial court overruled appellant's Crim. R. 29 motion for judgment of acquittal, the jury, on October 25, 2007, found appellant guilty of operating a motor vehicle while under the influence of alcohol. On November 5, 2007, appellant filed a "Motion for Judgment of Acquittal Pursuant to Rule 29(C), Ohio Rules of Criminal Procedure, Or, in the Alternative If Not Granted, Motion for New Trial Pursuant to Rule 33(A)(1)(4)(5), Ohio Rules of Criminal Procedure." As memorialized in a Judgment Entry filed on November 5, 2007, the trial court sentenced appellant to 180 days in jail, within 170 days suspended, and placed appellant on probation for a period of two (2) years. The trial court also ordered appellant to pay a $500.00 fine.
 {¶ 29} Pursuant to a Judgment Entry filed on November 27, 2007, the trial court denied appellant's November 5, 2007 motion.
 {¶ 30} Appellant now raises the following assignments of error on appeal:
 {¶ 31} "I. THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS ALL EVIDENCE SECURED AFTER STOPPING DEFENDANT-APPELLANT WITHOUT PROBABLE CAUSE. *Page 7 
 {¶ 32} "II. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS THE AUDIO PORTION OF A VIDEO BECAUSE THE TROOPER KNEW THE AUDIO WAS DEFECTIVE AND ONLY RECORDED DEFENDANT-APPELLANT'S STATEMENTS IN THE CRUISER.
 {¶ 33} "III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT PERMITTED TROPPER THAXTON TO TESTIFY AS AN EXPERT AS TO TIME TO STOP WITHIN THE ASSURED CLEAR DISTANCE.
 {¶ 34} "IV. THE TRIAL COURT ERRED IN ALLOWING THE JURY TO HEAR, AND FAILING TO STRIKE, THE STATEMENT OF DEFENDANT-APPELLANT IN THE BACK OF THE CRUISER WHEN THE AUDIO RECORDED ONLY DEFENDANT-APPELLANT'S STATEMENTS.
 {¶ 35} "V. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN OVERRULING DEFENDANT-APPELLANT'S MOTION FOR A NEW TRIAL AND FOR JUDGMENT OF ACQUITTAL, BASED ON ERRORS OF LAW, SUFFICIENCY OF AND WEIGHT OF THE EVIDENCE."
 {¶ 36} We cannot reach the merits of appellant's arguments at this time. Upon review of the record, we find appellant's charges for failure to drive within marked lanes and following too closely remain pending. Although a review of the transcript of the November 5, 2007 sentencing hearing reveals that the trial court orally found appellant guilty of such charges on the record[1] and then sentenced appellant on the record for the same, the trial court did not journalize this disposition. The trial court, in its Judgment *Page 8 
Entry, did not journalize its guilty finding on such charges or the sentences on such charges. It is axiomatic in Ohio that a court speaks only through its journal. State ex rel. Worcester v. Donnellon (1990),49 Ohio St.3d 117, 551 N.E.2d 183.
 {¶ 37} Because the trial court has failed to dispose of all the charges against appellant, the order appealed from is not yet a final, appealable order. See, R.C. 2505.02. This Court, therefore, does not have jurisdiction to consider appellant's assignments of error.
 {¶ 38} Accordingly, we must dismiss the case for lack of a final appealable order.
 {¶ 39} Accordingly, the appeal is dismissed.
Edwards, J., Wise, P.J. and Delaney, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the appeal is dismissed. Costs assessed to appellant.
[1] The trial court, at the sentencing hearing, stated, in relevant part, as follows: "All right, now that being said then we are here for sentencing. The jury had returned a guilty verdict on, let's see that was October 25th . Would you like to uh, and I will also enter guilty findings on the marked lanes violation and the following too closely charge. Those were minor misdemeanors." Transcript of November 5, 2007, hearing at 4. *Page 1